KATHERINE PALLADINO *v.* LATINA M. NARDI

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 6—decided June 4, 1947.

*Howard R. Matzkin,* with whom, on the brief, was *Yale Matzkin,* for the appellant (defendant).

*William K. Lawlor,* for the appellee (plaintiff).

BROWN, J. In this action to recover for the alienation of her husband's affections, the plaintiff had judgment and the defendant has appealed. The finding, in which no material change can be made, may be briefly summarized. The plaintiff and her husband have been married about twenty-five years and have three children. She and her husband lived happily together until November, 1938, when she noticed a change in his attitude toward her. She found he was seeing the defendant, a divorced woman, and thereafter despite her remonstrances to him and to her they kept on seeing each other. The plaintiff and her husband separated in 1940. In 1941, he went to live at the home of the defendant and that year ceased to support the plaintiff. In 1942, he brought an action for a divorce on the ground of intolerable cruelty which so far as appears never went to judgment. He served for a time in the navy and on his discharge returned to the defendant's home where he has since lived. He and the defendant have gone out together on a number of occasions, including a trip to New York. The defendant has addressed him in endearing terms in the presence of others, has displayed his photograph inscribed "To my very own" and has made him gifts.

Until the plaintiff's husband left her in 1940 he was an affectionate and devoted husband who denied her nothing within his means. Both before and since he was in the service, she and other members of the family have repeatedly attempted to get him to leave the defendant and return home. The plaintiff still has affection for her husband and would even now take him back if he would return but he has refused to leave the defendant and come back to his wife.

The court concluded: The defendant knew as early as 1939 that her continued association with the plaintiff's husband was doing or was likely to do a wrong to the plaintiff, but, nevertheless, thereafter continued and increased that association; his affection for the plaintiff grew steadily less from 1938 to 1942 because of the defendant's continued association with him; in 1942, the defendant succeeded in completely and permanently alienating the affections of the plaintiff's husband; as a result of the defendant's actions the plaintiff has been for several years past and will in the future continue to be permanently deprived of consortium with her husband and she has been damaged in the amount of $5000. Upon the basis of the facts these conclusions are warranted and support the judgment for the plaintiff. *Maggay* v. *Nikitko,* 117 Conn. 206, 209, 167 A. 816; *Miller* v. *Pierpont,* 87 Conn. 406, 410, 87 A. 785; *Reynolds* v. *Vroom,* 132 Conn. 53, 55, 42 A.2d 336; *Hart* v. *Knapp,* 76 Conn. 135, 140, 55 A. 1021; *Amellin* v. *Leone,* 114 Conn. 478, 481, 159 A. 293.

The defendant's contention that the court based its finding of the existence of an association between the plaintiff's husband and her upon its disbelief

of her denial thereof, contrary to the principle that "Facts cannot be established by not believing witnesses who deny them," set forth in *State* v. *Poplowski,* 104 Conn. 493, 495, 133 A. 671, is without merit. In the instant case there was the express testimony of witnesses which, in connection with the reasonable inferences therefrom, was ample to sustain the court's finding. The principle quoted is therefore inapplicable. *State* v. *Poplowski,* supra; *Leitzes* v. *F. L. Caulkins Auto Co.,* 123 Conn. 459, 462, 196 A. 145. Only two other assignments of error remain for consideration, that the court erred in a ruling upon evidence and that the damages awarded were excessive.

The plaintiff alleged that in 1942 the defendant alienated the love and affection of the plaintiff's husband. After the plaintiff had testified on her own behalf that she first became suspicious and learned of the defendant in 1938 and sometime after that remonstrated with her about going out with her husband, the defendant's attorney, calling attention to the allegation in the complaint, objected to testimony of matters happening in 1938 and, on the trial court's suggestion that the objection came late, moved that it be stricken out. In her brief the defendant contends that evidence of matters transpiring before 1942 was a variance from the allegation of the complaint and prevented her from pleading the Statute of Limitations. We may disregard various reasons having their basis in proper practice why the trial court was justified in its ruling. The plaintiff was entitled to lay her complaint as of the time when her husband's affection for her was finally completely alienated and to recover for so much of the loss or impairment as occurred within the period

allowed by the Statute of Limitations. *Maggay* v. *Nikitko,* supra, 213. Alienation of affections does not ordinarily, and certainly did not in this case, become complete at a definite time but was progressive in its nature. The plaintiff might properly introduce evidence showing how the situation developed, even though that evidence preceded the date when her husband's affection for her was completely alienated and even though it preceded the time beyond which the Statute of Limitations might prevent a recovery.

The court's $5000 judgment was for the full amount of the plaintiff's ad damnum. The defendant claims that the award is excessive. The court found these further facts bearing upon damages: Within a year or two after his marriage to the plaintiff, her husband was arrested in a hotel room in Stamford in company with some other woman. Until he left the plaintiff in 1940 he supplied her with an average of $25 per week. He is a man forty-five years of age. The gist of the defendant's argument is that the plaintiff's husband's affection for the plaintiff, as was early indicated by the Stamford incident, was so slight even before he first met the defendant that, whatever fault was chargeable to her, it could not have resulted in substantial damage to the plaintiff. *Amellin* v. *Leone,* supra. This claim finds its answer in the court's express finding that the plaintiff and her husband lived happily together until November, 1938, when the adverse effect of the defendant's conduct upon that relationship first became manifest, and that thereafter it caused the continuing deterioration thereof until the complete and permanent alienation of affections and loss of consortium in 1942 eventuated. The plaintiff's loss

of her husband's affection and society, and of his support and protection, and the injury to her feelings caused by the defendant's acts, were all proper elements of damage. *Noxon* v. *Remington,* 78 Conn. 296, 300, 61 A. 963. The trier "must assess damages for the 'complete and continuing loss' to the plaintiff." *Valentine* v. *Pollak,* 95 Conn. 556, 561, 111 A. 869. That is, "damages are assessed to the date of trial and include future as well as past sufferings and disabilities. *Duffy* v. *Bishop Co.,* 99 Conn. 573, 581, 122 A. 121." *Armstrong* v. *Dolge,* 130 Conn. 516, 519, 36 A.2d 24. The application of these principles to the facts found leaves no doubt that the award made by the court was justified, notwithstanding that the plaintiff's husband was absent in service for a time after he had finally left her.

There is no error.

In this opinion the other judges concurred.