ELEANOR HARDING REYNOLDS
*vs.*
CHARLOTTE VROOM

Superior Court

MEMORANDUM FILED JUNE 24, 1943.

*Benjamin Slade,* of New Haven, for the Plaintiff.

*Campner, Pouzzner & Hadden,* of New Haven, for the Defendant.

McEVOY, J.   This is an action in which the complaint alleges that the defendant alienated the affections of the plaintiff's husband.   In the oral argument it was stated, and, apparently conceded, that the plaintiff has attached personal property belonging to the defendant of a value in excess of $100,000.   The defendant, under the provisions of sections 5740 and 5741 of the General Statutes, Revision of 1930, has applied to the undersigned as a judge to have the attachment reduced and claims that it is excessive.   The plaintiff has made an oral motion in the nature of a motion to quash. The action is returnable to the Superior Court for New Haven County on the first Tuesday of September, 1943, and, since the action is not yet in court, this application is made to a judge of the court.

The plaintiff contends that both of the sections of the statutes, that is, section 5740 and section 5741, relate only to civil causes wherein the plaintiff's claim may be said to be liquidated in character, when the amount thereof may be ascertained by some fixed or recognized legal standard and also to cases where the law fixes a limitation as to the amount that may be recovered (such as in death cases).

In her brief, the plaintiff says that neither one of these statutes has any application to the instant case for the reason that the damages claimed are unliquidated and that the amount of the plaintiff's attachment should be based upon the amount which the plaintiff may recover and that that sum is ascertainable only after a full trial which, of course, involves a hearing of all the evidence presented.

Section 5740 requires:  (a) That the plaintiff state "under oath the amount of the plaintiff's claim"; (b) "whether he verily believes the same is justly due"; and (c) "if required by such judge, to furnish a bill of particulars or give a circumstantial statement thereof."

The plaintiff further claims that ·the amount involved and the amount for which the attachment should be permitted to stand is to be determined only by the *ad damnum* clause. The plaintiff further says that, upon the face of the pleadings, it now appears that nothing is now "justly due." The plaintiff further claims that it is not possible, under the present situation, for the plaintiff to file either a bill of particulars or to make a circumstantial statement of claim which would, in any way, be of assistance to the judge in determining the present motion.

Much stress is laid upon the meaning of the word "apparent."

"The office of the judge before whom the application is pending, is to discover the amount of the plaintiff's apparent claim, and not to pass upon its legal validity or to weigh the chances of recovery upon it. Our statutes of long standing permit one who, however mistakingly, claims that he has a right of action against another, to institute an action against him and, as auxiliary to that action, to make an attachment to secure his recovery. The validity of the claim made is left for the determination of the court." *Sachs vs. Nussenbaum,* 92 Conn. 682, 688.

"These rules require a plaintiff to state correctly in the complaint the nature of the claim he makes and the circumstances out of which it arises. But as a claim is, or may be. something very different from the amount of the claim, a plaintiff is not required to state that partial payment have been made.... While, therefore, the plaintiff's complaint may be said to state the nature of her claim, it cannot be said to state any amount as being the amount of her claim." *Leonard vs. Charter Oak Life Ins. Co.* 65 Conn. 529, 537.

When a claim is uncertain, indefinite and indeterminate in extent and amount it is in. the fullest sense unliquidated. *Root vs. New Haven Trust Co.,* 82 Conn. 600, 606. This claim, from its very nature, must be classed as an unliquidated claim.

It is not feasible or possible, under the present circumstances, for the plaintiff to state, nor for the court to find, the precise amount of the plaintiff's claim. That must be determined after a trial upon the merits either by a judgment directly or by judgment based upon a verdict.

This is, of course, a tort action. It is an action for the alienation of affections.

In actions for alienating the affections or for criminal conversation, the recovery may include damages for mental anguish, injury to health, character and feelings, loss of the husband's love and society and destruction of the home. Injuries such as these are indeed incapable of precise measurement, but when proven, they do justify substantial damages. *Valentine vs. Pollak,* 95 Conn. 556.

Verdicts of varying amounts have been rendered in other states in such cases, $22,542 in *Hurdle vs. Lang,* 125 Me. 518, 134 Atl. 193. In *Scharwath vs. Brooks,* 7 N.J. Misc. 397, 145 Atl. 727, a verdict of $90,000 was rendered but it was held to be excessive in view of the arrangements made in a divorce case which were favorable to the plaintiff. In *Woodhouse vs. Woodhouse,* 99 Vt. 91, 130 Atl. 758, a verdict for $400,000 actual damages and $65,000 exemplary damages for alienating a husband's affections was rendered. However, the trial court found that the sum of $100,000 compensatory damages was reasonable and not excessive and the minimum sum which the jury, under a proper review of the evidence and law, could reasonably be expected to allow; and that in regard to punitive damages, $25,000 was such a sum. A remittitur was ordered, otherwise the verdict would be set aside. The plaintiff exercised the option of filing a remittitur whereupon judgment was entered against both defendants for $125,000 damages. *Woodhouse vs. Woodhouse, supra* (p. 151 of 99 Vt.).

No verdict, comparable in size to any of these sums, has ever been rendered *and sustained* in Connecticut in any action for the alleged alienation of affections.

In a recent trial to the court, in a similar case (*Danielson vs. Guntry,* 12 Conn. Sup. 12), a judgment was rendered by Judge Quinlan in favor of the plaintiff to recover of the defendant $12,500 for alienation of affections. In his memorandum of decision rendered in that case Judge Quinlan said that the amount of this judgment was large in comparison with judgments entered upon verdicts in other cases of that kind.

While the amount of property attached in this action is in excess of $100,000 the claim for damages is $250,000 and

the amount for which the sheriff was directed to make attachment is $200,000.

Some of the verdicts rendered in cases for alienation of affections in Connecticut are as follows: *Noxon vs. Remington,* 78 Conn. 296, $3,750 of which $2,050 was subsequently remitted by order of the court, and judgment rendered for the plaintiff for $1,700. *Amellin vs. Leone,* 114 Conn. 478, verdict $3,500. *Maggay vs. Nikitko,* 117 Conn. 206, verdict $4,500.

In addition to this there was the case recently tried before Judge Quinlan in Bridgeport in which he rendered a judgment for $12,500. *Danielson vs. Guntry, supra.* In deciding that case Judge Quinlan said: "While it is true that in *Amellin vs. Leone,* 114 Conn. 478, the court expressed an opinion that $3,500 was a large verdict, it nevertheless said: 'injuries such as these are indeed incapable of precise measurement, but, when proven, they do justify substantial damages.'"

The damages claimed in the instant case are substantial. The right to make a preliminary attachment, without notice to the defendant, is in accordance with our long established Connecticut practice. It is an arbitrary practice and it may, if not reasonably exercised, result in great damage. The purpose of permitting an attachment to be made, in the first instance, is to secure the payment of any judgment which the plaintiff may be able to obtain.

The right of attachment is clearly confirmed in section 5712 of the General Statutes, Revision of 1930, although, in that case, specific regulation is made as to attachments or executions against the body.

Exemption of the body from execution is specifically provided in section 5803 of the General Statutes, Revision of 1930, and the cases in which executions may be levied against the body are specifically set out.

In section 5994 of the General Statutes, Revision of 1930, additional provision is made for attachment of or execution against the body in the case of fraud in contracting debt or concealing property.

The amount of property attached in the instant case would indicate that the property of the defendant was readily accessible for attachment and levy.

If sections 5740 and 5741 of the General Statutes, Revision of 1930, were read alone it would be difficult to find warrant for reduction of a claimed excessive attachment where the damages are unliquidated. In construing a statute, in order to arrive at a reconcilable result, it is essential to construe it in connection with and with reference to other existing statutes.

The provisions of section 5735 of the General Statutes, Revision of 1930, have to do with the amount of an attachment bond. That statute reads as follows: "All persons interested may be heard in relation to the amount and sufficiency of the bond offered by the defendant. Such amount shall equal the value of the estate which the process directed to be attached, unless the action be founded in tort for the recovery of unliquidated damages, and it shall appear to the authority to whom the application is made that the amount so required to be attached is excessive, in which case he may take a bond for such sum as he may deem reasonable."

The second sentence in that section has some significance. It reads: "Such amount shall equal the value of' the estate which the process directed to be attached, unless the action be founded in tort for the recovery of unliquidated damages, and it shall appear to the authority to whom the application is made that the amount so required to be attached is excessive, in which case he may take a bond for such sum as he may deem reasonable."

It seems reasonable to hold that the conjunctive "and" following the word "damages" is intended to refer to the entire subject of unliquidated damage and it would appear that the specific intent in the enactment of this statute was to provide that, even in the case of unliquidated damages, the authority, before whom the application is brought for the reduction of the alleged excessive attachment, may reduce it, if he deems it excessive and he may order a bond to be taken for the reduced amount.

The subject of "Attachments" is dealt with in chapter 297 (p. 1781) of the General Statutes, Revision of 1930, and the chapter extends to the middle of page 1797.

Considering the contents of the varying statutes, it would seem to be reasonable to hold that the legislative intention was to provide a means for the discharge of the excessive

part of an attachment and to limit the holding attachment to such sum as in the opinion of the judge before whom the application is brought, would seem to be reasonable to effectuate the purpose intended. If this view be not taken then irreparable damage might result in the attachment of property for minor claims in tort. The extent to which this abuse might be carried is readily apparent.

Under the circumstances this is held.

1. That the judge before whom the application is brought for the reduction of excessive attachment has authority to reduce the attachment even though the claim be unliquidated.

2. In the instant case it would seem that the plaintiff would be amply protected if the attachment were reduced to $30,000.

Should the plaintiff prevail and obtain a larger judgment than $30,000, the past history would indicate that the plaintiff could then find sufficient assets out of which to satisfy the judgment obtained.

Order may enter that the attachment be reduced to $30,000 and that the excess of property over $30,000 be released from the attachment.